## STATE OF NORTH DAKOTA EX REL. C. P. PETERSON,
Petitioner, v. THOMAS HALL, Secretary of State, and Forrest Vaughan, County Auditor of Towner County, Respondents.

### (176 N. W. 117.)

**Elections — mandamus.**

Upon the application of the petitioner and relator for a writ of mandamus commanding Thomas Hall, as secretary of state, to certify the name of the petitioner and relator to the county auditor of Towner county, which constitutes the twenty-second legislative district, as candidate for the office of state senator, at a special election to be held on the 25th day of November, 1919, and upon the petition of the relator for a writ of mandamus to compel such county auditor to place the petitioner's name upon the election ballot,

It is *held*, for reasons stated in the opinion, that a writ of mandamus should issue against Thomas Hall as secretary of state, and against Forrest Vaughan, county auditor of Towner county, as asked and prayed for by the petitioner and relator.

Opinion filed November 10, 1919.

Petition for original writs of mandamus.

Writs ordered issued.

*William Lemke,* for petitioner.

The courts have always construed the provisions of law governing nomination of candidates for office liberally and in the interest of the public.

Where a statute requires that an act be performed a fixed number of days previous to a specific date, the last day should be excluded, and the first day included, in making the computation. State ex rel. Jones v. Board of Deputies, 112 N. W. 136; State ex rel. Anderson v. Falley, 9 N. D. 464; Cosgriff v. Board of Election, 91 Pac. 98.

Though the statute fixing the time for filing nomination certificates is mandatory, the supreme court may, in its discretion, relieve from accidents and mistakes causing delay any such filing if the delay is not due to the negligence or fault of the party to whom the filing is intrusted, and the application is made without laches, and the granting thereof will not cause confusion in preparing the ballots. Re Darling, 82 N. E. 438; People ex rel. Simmons v. Ham, 106 N. Y. Supp. 312; Earl v. Lewis, 77 Pac. 235.

*William Langer,* Attorney General, and *F. E. Packard,* Assistant Attorney General, for respondents.

That certificates of nominations such as was filed in the instant case must be filed strictly in compliance with law is not an open question. This was fully considered in State v. Falley, 9 N. D. 464, 83 N. W. 913.

Petitions must be filed as provided by § 501 of the 1899 Code (Comp. Laws 1913, § 971A); Miller v. Burnham, 10 N. D. 405.

GRACE, J. This is an original application to this court for a writ of mandamus commanding the defendant, as secretary of state, to certify the name of the relator to the county auditor of Towner county, which county constitutes the twenty-second legislative and senatorial district, to be placed on the ballot, to be voted at a special election to be held November 25 A. D., 1919, in said legislative district, and for a writ of mandamus commanding the county auditor of said Towner county to place the name of said C. P. Peterson upon the said election ballot, at said special election to be held at the time above stated, in said senatorial and legislative district for the state of North Dakota.

A short statement of facts will suffice to present the matters at issue. The regularly elected and duly qualified senator of the said twenty-second legislative district of North Dakota, Honorable A. S. Gibbons, died, thus leaving a vacancy in that office, in that district, of which facts the county auditor of Towner county gave due notice to Governor Frazier, who, on the 18th day of October, 1919, issued a proclamation and filed the same with the secretary of state, calling an election to fill such vacancy, and directed it to be held, under § 501 of the Code of North Dakota, of the year of 1899, and further directed that petitions of nomination be filed not later than 11 o'clock, November 25, 1919, with the secretary of state. Petitions or certificates of nomination were circulated on behalf of C. P. Peterson, which were signed in duplicate, and one copy was filed with said Forrest Vaughan as auditor of Towner county, Cando, North Dakota, on the 25th day of October, 1919, before 11 o'clock, A. M. of said day; and, at the same time and place, a duplicate original of the said nominating petition was duly and properly mailed in the United States mail at Cando, North Dakota, by registered letter, to the secretary of state, Thomas Hall, at Bismarck, North Dakota, and, by him thereafter received.

The secretary of state admits receiving said petitions of nomination on the 27th day of October, A. D. 1919. He further admits that the petitions were circulated and signed by the legally required number of voters, placing in nomination C. P. Peterson, of Bisbee, Towner country, State of North Dakota, and admits that there is a vacancy in the office of state senator, in and for the twenty-second legislative district, which embraces Towner county only.

It is admitted by the secretary of state, that, since receiving said petitions of nomination of C. P. Peterson, as aforesaid, he has refused and continues to refuse to certify to Forrest Vaughan, county auditor of said Towner County, the said petition of nomination of said Peterson. His only ground for not doing so is based upon the claim that it was not received by him thirty days before the time of said special election. The auditor of Towner county, said Forrest Vaughan, refused and still refuses to place the name of said Peterson upon the ballot for said special election as candidate for state senator for said legislative district, upon the ground that it has not been certified to him by the secretary of state. The election is a special one; the legislative district in question is composed of only Towner county. The questions presented are:

(1) Must the petition for nomination be filed with the secretary of state? And

(2) Must they be filed with the secretary of state thirty days prior to the date of the special elections?

(3) May the petition be filed by mailing it to the secretary of state by duly registered letter, and is that a due presentation of it for filing?

We will discuss these questions together. As they are so closely related there is no need of a separate analysis of each question.

Considerable has been said by the parties to this proceeding with reference to certain provisions of the primary law. It might clarify matters to state from the very beginning that provisions of the primary law have no application to the questions confronting us, excepting in so far as it recognizes, in case of special election such as this, § 501, Rev. Codes 1899 (which was § 5 of the Law of 1891, and other provisions of law referred to in § 501), relative to the method of making nominations of candidates to be voted for at a special election.

Section 973, Comp. Laws 1913 (which was formerly § 8 of the

Election Law of 1891) has no application to a special election; that has reference, and is applicable only in a general election. The same is true of § 974 (which was § 9 of the 1891 Law).

We will subsequently discuss these two sections at greater length. Section 501 provides a method which may be used for nominating a candidate to a public office at a special or general election. This has been repeatedly held and decided by the courts of this state, and there can be no dispute in this regard.

The petition for nomination, provided for in this section, may be filed, and is required to be filed, with the secretary of state in the manner prescribed in § 500 of the Code of 1899.

Section 501 specifically prescribes that the petitions or certificates of nomination shall be so filed. Section 500, so far as it governs the filing of the petition, is specifically made a part of said § 501 by a specific reference thereto.

We have now disposed of the question as to where the petition or certificate of nomination shall be filed; and we may interpolate that where, under the law which we are discussing, provision is made for the nomination to an office by a petition signed by duly qualified electors, etc., that such petition is of the same force, effect, and character as a certificate of nomination otherwise provided for.

We come now to the discussion of the question of the time, if any, of the filing the petition with the secretary of state, and the inapplicability of § 973, Comp. Laws 1913 (formerly § 8 of the Laws of 1891). We must now distinguish between a general and a special election.

In the case of state ex rel. Anderson v. Falley, 9 N. D. 464, 83 N. W. 913, it is held that the certificate of nomination must be filed with the secretary of state, not less than thirty days before the election. That was a general election, and the section under consideration was directly applicable to it.

In the case of State ex rel. Miller v. Burnham, 20 N. D. 405, 127 N. W. 504, the election was a general primary election, and the section was also applicable to that situation. Why was it stated in § 973, that the provisions of that section should not apply to special elections? For the very reason that, if they were made applicable, it must often happen that no special election could be had.

A special election is brought about by some exigency usually unfore-

seen; for instance, as in the present case, by the death of Honorable A. S. Gibbons, who, prior to his death, was the incumbent of the office of state senator of the said twenty-second legislative district; so might a vacancy be created in a similar office by resignation, etc. There might often, and there do, arise occasions where it would be necessary, in the public interest, to hold a special election to fill such vacancy, and where it would be necessary to issue the proclamation of election, setting the time thereof, and have the whole election begun and completed in much less time than thirty days. The legislature may be in session and a vacancy occur in the representation from some district or districts by reason of death or otherwise. The session of the legislature may be, for instance, within three weeks of the time when it must, by the Constitution and law, close its session. Yet it may be absolutely imperative that the vacancy thus created be filled before the close of the session of the legislature. Public necessity might require it to be so filled. In such case, there is no doubt but what a proclamation, by the governor of the state, could be issued, fixing the time for such election, and a time for filing certificates of nomination of persons to fill such vacancy; and that such election could be initiated and completed within such space of time, as, under the circumstances of the case, could be said to be reasonable, and in less than thirty days. Thus, it clearly appears that the exception referred to in the section, *viz.*, that is, provisions should not apply to special elections, was for the purpose of meeting just the conditions we have referred to. If it were otherwise, manifestly it might often occur, the thirty-day notice being required, a special election would be entirely prevented.

In the case before us, the governor did fix the 25th day of October, 1919, as the date when the petitions for nomination should be filed with the secretary of state. Have such petitions been so filed? In order to determine this question, we must again refer to § 501, wherein is contained the *manner* and *direction* of filing the same. In that section, we find these words: "Such certificate may be filed, as provided for in § 500, in the same manner and with the same effect as a certificate of nomination made by the party convention."

As we have above stated, § 500 is referred to and made a part of § 501; that disposes of where the petition of nomination shall be filed.

The remainder of the language just quoted, to wit, the following

words, "in the same manner, and with the same effect as a certificate of nomination made by a party convention," has reference to § 499, Rev. Codes 1899, which is § 3 of the Laws of 1891, and in so far as that section is applicable to carry out the provisions of § 501, it is a part of it. It is referred to by § 501, and by this reference made a part of it.

Section 499 refers to the manner of filing the certificate of nomination of the candidate, for a public office, who has been nominated by a convention; and after stating what such certificate must contain and how it shall be signed, that is, by the presiding officer and secretary of the convention, it further provides that "such certificate, made out as herein required, shall be delivered by the secretary or president of such convention, by registered letter or in person, without charge, to the secretary of state, or to the county auditor, as hereinafter required."

The reference to county auditor in said § 499, Laws of 1899, or § 3, Laws of 1891, has no application to this case. The rest of the law quoted does. It has reference by reason of special reference made to it in § 501. It thus became a part of § 501 by such reference, so far as it is necessary to carry out the provisions thereof.

Within the meaning of § 3, Laws of 1891 (or § 499, Laws of 1899), the manner of filing a certificate of party nomination was by delivering it in person to the secretary of state, or sending it by registered letter in the manner provided in said section. This constitutes the manner of filing, and § 501 states that the certificate of nomination provided for in § 501, which is not a party nomination, may be filed in the same manner as a certificate of party nomination provided for in § 499 or § 3, above referred to, which means by delivery in person to the secretary of state, or by registered mail.

As above stated, this is the manner of filing. The time of filing a party nomination is provided for by § 8 of the 1891 Laws, which is § 793, Comp. Laws 1913, from the provisions of which, as we have seen, special elections are specifically excepted, and that section has no application to the petition in question.

It appears that the petition in question was filed within the meaning of said § 501, and under the sections to which it refers, and which are thus made a part of it, and that it was as registered mail, in the forenoon of the 25th day of October, 1919, deposited in the postoffice at Cando, addressed to the secretary of state, at Bismarck, North Dakota.

It was thus, within the meaning of § 501, and other sections to which reference was made therein, filed with the secretary of state, thirty days before the election to be held.  It was not necessary that it should have been that length of time had not the proclamation of the governor fixed the date upon which petitions should be filed with the secretary of state on the date above stated, which, excluding the day of election, would be thirty days prior to the date of election, and it is only in this regard that the thirty-day period of time becomes material.

This opinion is not in conflict with the decision in the case of State ex rel. Burtness v. Hall, 37 N. D. 267, 163 N. W. 1055, upon the points involved in this case.

The petition or certificate of nomination in question being properly and, within time, filed with the secretary of state, it is his ministerial duty forthwith to certify to Forrest Vaughan as county auditor of Towner county, North Dakota, the name of C. P. Peterson as nominee for the office of state senator at said special election to be held in the said twenty-second senatorial and legislative district on the 25th day of November, 1919; and it is the ministerial duty of the defendant Forrest Vaughan, as the county auditor of Towner county, North Dakota, to forthwith place the name of C. P. Peterson upon the said election ballot, as a nominee for the office of state senator, at the special election to be held at the time and place last above mentioned.

The writs of mandamus should therefore issue against Thomas Hall as secretary of state, and Forrest Vaughan as county auditor of Towner county, North Dakota, as requested and prayed for in the petition of the relator.

Let the writs be so issued.


ROBINSON and BRONSON, JJ., concur.


BIRDZELL, J. (concurring).  I concur in the opinion of Mr. Justice Grace and in his statement of the reasons for the issuance of the writ, with, however, a minor exception.  It will be noticed that the governor's proclamation allows ample time for the operation of the statutory provisions respecting the time of filing, and it refers specifically to a section of the statute (§ 501, Rev. Codes 1899).  This section in turn speaks, as indicated in the principal opinion, upon the manner of filing petitions

or nominations with the secretary of state, referring to other sections which recognize the use of the mails. It seems to me, therefore, that the proclamation should be construed in the light of existing provisions of law in determining the sufficiency of the filing as to manner. This is both a reason for holding the filing sufficient in the instant case, as is demonstrated in the principal opinion, and, to my mind, for refraining from expressing any opinion as to the legality of calling a special election to be held within a period that would not admit of certification or advertisement for the statutory period. I therefore express no opinion upon the question as to the applicability of other sections not here in controversy to special elections, or as to the legality of special elections called to be held within such time as would not meet certain general statutory requirements.

In concurring I also deem it proper to say that since the principal opinion was prepared in this case; an amended return and answer has been filed, in which the respondents have expressed their willingness to place the name of the relator upon the ballot. But since the case had already been submitted before this amended answer was filed, I deem it proper for the court to express its opinion upon the questions raised, especially as counsel for the relator has had no opportunity to consider the amended return, and as there is but a short time remaining before the election.

CHRISTIANSON, Ch. J. In this case the governor of the state issued a proclamation, calling a special election for the election of a senator in the twenty-second legislative district. The proclamation required that petitions for nomination "be filed *not later than* 11 *o'clock on the 25th day of October,* 1919, *with the county auditor and secretary of state."* The relator, Peterson, on October 25, 1919, caused a nominating petition to be filed with the county auditor and mailed to the secretary of state by registered mail. The secretary of state received the petition on the 27th day of October, 1919. The question arose whether the petition was presented within the time prescribed by law.

In the original return the respondents asserted that the petition was not received in time, and they refused to recognize the petition. But in a subsequent return they have informed the court that there was only one other nominating petition presented, *viz.,* the petition of one B. J.

Beisel; that said Beisel has requested such officers that the name of the relator be placed upon the ballot as a candidate; that in view of this, and other circumstances, the secretary of state expresses "his entire willingness to certify the name of C. P. Peterson to the county auditor of Towner county as having been nominated as a candidate for state senator by petition;" and "said Forrest Vaughan, county auditor of Towner county, expresses his willingness to place the said name upon the official ballot." · Hence, it appears that the respondents will place the name of the relator upon the ballot, even though this court decided that there was no duty incumbent upon them to do so. In these circumstances the questions of statutory constructions raised, and attempted to be decided, have really become moot, and I deem it wholly unnecessary to express any opinion thereon.

Nor can I see what has been accomplished by the opinions which purport to decide such questions, unless it be to demonstrate the necessity of some appropriate legislative action on the subject of special elections. For, while my associates agree on the general result, and three of them agree on some of the legal propositions discussed in the principal opinion, apparently no three members are agreed upon all that is said upon the subject in that opinion.

I do not see, however, how the respondents could very well have interpreted the governor's proclamation otherwise than they did. The governor said that the petitions should " be *filed* not later than 11 o'clock on the 25th day of October, 1919." The word "filed," as so used, has a well-settled, definite meaning. All dictionaries are agreed that to file a paper on the part of a party means to actually deliver the paper into the official custody of the designated officer. See Webster's Int. Dict. and Black's Law Dict. Nor is there anything in our statutes relative to elections which changes the meaning of the word "file." Section 499, Rev. Codes 1899 (§ 970, Comp. Laws 1913), merely makes it the duty of the president and secretary of a nominating convention to prepare a proper certificate of nomination and deliver the same to the secretary of state, either "by registered mail or in person, without charge."

ROBINSON, J. (concurring specially). At a special election to be held on November 25, 1919, the relator is a candidate for state senator for Towner county. Thirty-one days before the special election he filed

with the county auditor of Towner county a nominating petition as required by law, and mailed to the secretary of state a duplicate of the same. Now the county auditor and the secretary of state refuse to put his name on the ballot, because the nominating petition was not filed with the secretary of state thirty days prior to the election. There is no good reason for filing the petition with the secretary of state; it is an idle act, which the law does not require. "It is the duty of the county auditor to provide printed ballots, and to cause to be printed on the ballots the names of each candidate whose name has been certified to or filed with him in the manner provided by law." The petition of the relator giving his name was thus filed with the county auditor, and hence it became his imperative and plain duty to cause the name to be printed on the official ballot. It is made the duty of the county auditor to deliver to the inspector of each election precinct in his county the official ballot prepared by him, at least twenty-four hours before the time for opening the polls on election day. It is the duty of the county auditor to provide poll books for the use of the county. In regard to county elections the county auditor appears to be the whole thing. The law does not require idle acts, such as the mailing of a petition to the secretary of state. But were it necessary to file a copy of the petition with the secretary of state, mailing the same to him thirty-one days before the election was entirely sufficient. Unless, where there is good reason to the contrary, a statute fixing the time to perform a public duty is only directory, and not mandatory. Hence, even though the petition had been filed with the county auditor only twenty-five days prior to the election it would have been entirely sufficient. The election laws are to be liberally construed to give every voter a chance to express his preference for men or measures.